**DALTON FOUNDRIES, Inc., v. UNITED STATES.**

No. J–238.

Court of Claims.

March 7, 1932.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

1. The Dalton Foundries, Inc., is and has been since December 13, 1924, a corporation organized, existing, and doing business under and by virtue of the laws of the state of Indiana, with its office and principal place of business at Warsaw in that state. Prior to December 13, 1924, the Dalton Foundries, Inc., was doing business as the Dalton Malleable Castings Company, a corporation organized, existing, and doing business under and by virtue of the laws of the state of Indiana, with its office and principal place of business at Warsaw in that state since February 27, 1923. The Dalton Malleable Castings Company, on or about January 1, 1924, acquired the properties of the Sunderland Company, a corporation, since November 26, 1920, organized, existing, and doing business under and by virtue of the laws of the state of Illinois, with its office and principal place of business from November, 1920, to May, 1921, at Chicago in that state, and from June, 1921, to January 1, 1924, its office and principal place of business was at Warsaw in the state of Indiana, at which time the Dalton Malleable Castings Company took over the assets and liabilities of the Sunderland Company. On December 13, 1924, the Dalton Malleable Castings Company changed its name and title to the Dalton Foundries, Inc.

2. During the times hereinafter mentioned the Sunderland Company, Dalton Malleable Castings Company, which acquired the assets of the Sunderland Company on January 1, 1924, and plaintiff were engaged in the business of manufacturing and selling air pumps. The plaintiff also operated a malleable iron foundry, a gray iron foundry, and a machine shop, and manufactured a general line of castings, wheel pulleys, grease guns, and some automobile specialties.

3. The Sunderland Company, Dalton Malleable Castings Company, and plaintiff made and filed manufacturer's excise tax returns monthly for the period November, 1920, to February, 1926, inclusive, showing the amount of tax due thereon which was duly assessed on such returns by the Commissioner of Internal Revenue, paid by said companies and plaintiff, for the months, in the amounts, and on the dates hereinafter set forth as follows:

## The Sunderland Company

| Period | Year | Month | Year | Amount | Date paid |
|---|---|---|---|---|---|
| Nov. | 1920 | Dec. | 1920 | $3,72 | 12/22/20 |
| Dec. | 1921 | Jan. | 1921 | 60.20 | 1/21/21 |
| Jan. | | Mar. | | 171.98 | 3/30/21 |
| Feb. | | Mar. | | 178.30 | 3/30/21 |
| Mar. | | Apr. | | 120.98 | 4/20/21 |
| Apr. | | May | | 94.16 | 5/13/21 |
| May | | June | | 94.59 | 6/23/21 |
| June | | July | | 12.40 | 7/21/21 |
| July | | Aug. | | 48.25 | 8/29/21 |
| Aug. | | Sept. | | 102.27 | 9/26/21 |
| Sept. | | Oct. | | 44.97 | 10/27/21 |
| Oct. | | Nov. | | 60.57 | 11/5/21 |
| Nov. | | Dec. | | 80.74 | 12/8/21 |
| Dec. | | Jan. | 1922 | 117.18 | 1/9/22 |
| Jan. | 1922 | Feb. | | 166.15 | 2/13/22 |
| Feb. | | Mar. | | 317.98 | 3/20/22 |
| Mar. | | Apr. | | 465.82 | 4/21/22 |
| Apr. | | May | | 315.20 | 5/29/22 |
| May | | July | | 164.26 | 7/3/22 |
| June | | Aug. | | 249.12 | 8/2/22 |
| July | | Aug. | | 403.84 | 8/30/22 |
| Aug. | | Oct. | | 507.01 | 10/2/22 |
| Sept. | | Nov. | | 413.48 | 11/2/22 |
| Oct. | | Dec. | | 266.88 | 12/1/22 |
| Nov. | | Jan. | 1923 | 388.90 | 1/4/23 |
| Dec. | | Jan. | | 449.94 | 1/31/23 |
| Jan. | 1923 | Mar. | | 291.35 | 3/5/23 |
| Feb. | | Apr. | | 378.70 | 4/2/23 |
| Mar. | | Apr. | | 320.82 | 4/28/23 |
| Apr. | | May | | 559.42 | 5/29/23 |
| May | | July | | 385.92 | 7/2/23 |
| June | | Aug. | | 404.06 | 8/20/23 |
| Aug. | | Oct. | | 209.71 | 10/2/23 |
| Sept. | | Oct. | | 208.42 | 10/30/23 |
| Oct. | | Dec. | | 299.48 | 12/3/23 |
| Nov. | | Jan. | 1924 | 161.17 | 1/2/24 |

## Dalton Malleable Castings Company

| Period | Year | Month | Year | Amount | Date paid |
|---|---|---|---|---|---|
| Dec. | 1923 | Feb. | 1924 | $450.14 | 2/2/24 |
| Jan. | 1924 | Feb. | | 326.28 | 2/29/24 |
| Feb. | | Mar. | | 438.64 | 3/31/24 |
| Mar. | | Apr. | | 441.64 | 4/30/24 |
| Apr. | | May | | 433.11 | 5/27/24 |
| May | | June | | 148.02 | 6/27/24 |
| June | | Aug. | | 132.99 | 8/5/24 |
| July | | Aug. | | 179.20 | 8/25/24 |
| Aug. | | Oct. | | 169.11 | 10/1/24 |
| Sept. | | Oct. | | 211.62 | 10/24/24 |
| Oct. | | Nov. | | 129.77 | 11/8/24 |
| Nov. | | Dec. | | 107.97 | 12/11/24 |

## Dalton Foundries, Inc.

| Period | Year | Month | Year | Amount | Date paid |
|---|---|---|---|---|---|
| Dec. | 1924 | Jan. | 1925 | $132.12 | 1/17/25 |
| Jan. | 1925 | Feb. | | 129.61 | 2/16/25 |
| Feb. | | Mar. | | 78.86 | 3/23/25 |
| Mar. | | Apr. | | 193.18 | 4/27/25 |
| Apr. | | May | | 266.70 | 5/28/25 |
| May | | July | | 205.09 | 7/2/25 |
| June | | July | | 298.64 | 7/28/25 |
| July | | Aug. | | 285.98 | 8/31/25 |
| Aug. | | Sept. | | 235.42 | 9/30/25 |
| Sept. | | Oct. | | 236.86 | 10/26/25 |
| Oct. | | Nov. | | 200.39 | 11/27/25 |
| Nov. | | Dec. | | 86.93 | 12/30/25 |
| Dec. | | Jan. | 1926 | 53.25 | 1/26/26 |
| Jan. | 1926 | Mar. | | 360.60 | 3/1/26 |
| Feb. | | Mar. | | 94.06 | 3/31/26 |

4. On October 30, 1923, the Sunderland Company filed its claim for refund No. 317675 for excise tax paid on air pumps for the period November, 1920, to May, 1921, inclusive, in the amount of $723.93, which was rejected by the Commissioner on April 5, 1924. The grounds of this claim for refund were, in substance, that the pumps so taxed were used for a large number of purposes for which they were equally adapted, that they had been constructed on the same principle since 1890, and for more than twenty-five years had been an article of general commerce. The Commissioner held that the use of such pumps for purposes other than inflating automobile tires was merely incidental and rejected the claim.

5. On October 25, 1923, the Sunderland Company filed its claim for refund No. 317492 of manufacturer's excise tax so paid on air (tire) pumps for the period June, 1921, to June, 1923, inclusive, in the amount of $6,915.07, which was duly rejected by the Commissioner of Internal Revenue on April 28, 1924. The grounds upon which the said claim for refund was predicated, as well as the Commissioner's reasons for the rejection of said claim, were identical to those set out in the preceding finding.

6. On August 14, 1926, the Dalton Foundries, Inc., filed its claim for refund No. 355019 of manufacturer's excise tax so paid on air pumps for the period August, 1923, to February, 1926, inclusive, in the amount of $5,607.21, which was duly rejected by the Commissioner of Internal Revenue on March 1, 1927. The grounds upon which the plaintiff's claim for refund was based, as well as the Commissioner's reasons for the rejection of the said claim, are similar to those set out in connection with the claim for refund No. 317675 of the Sunderland Company referred to in finding 4 hereof.

7. The only direct evidence concerning the exact type and design of the air pumps manufactured and sold either by the Sunderland Company or the plaintiff is contained in an undated circular offered in evidence by the defendant as its Exhibit D, which illustrates and describes the "Sunderland Big Boy Tire Pump." The label on the pump illustrated reads as follows:

"Sunderland's Tire Pump—BIG BOY— Made by Sunderland Co., Warsaw, Ind."

The following descriptive matter appears beneath the illustration:

"Equipped with Slip-on Tire Connection

"Made in two sizes: 1¼ x 21 inches and 1½ x 21 inches.

"Black enamel steel barrel.

"Black enamel charcoal iron base.

"Brassed cap and bumping post (bumping post being part of the cap) and drilled so as to give a bearing service for the piston rod 1⅛ inches long.

"Brassed handle ring.

"Black enamel handle.

"5-ply red rubber hose—extra long.

"⅜-inch steel piston rod.

"Brass hose connection with ball check valve.

"Brass pitner slip-on tire connection."

In addition to pumps of the type hereinabove described, the plaintiff manufactured and sold pumps having barrels of 2-inch diameters.

8. Wholesalers and jobbers of hardware and mail order houses afforded the plaintiff its principal channel for the distribution of the pumps manufactured by it during the period involved herein. During that same period the plaintiff also sold pumps to truck manufacturers, stove manufacturers, power and heat companies, manufacturers of generating equipment, gas and electric utility companies, oil burner supply companies, lamp manufacturing companies, manufacturers of welding equipment, and to plumbing and heating concerns. Plaintiff's pumps were by reason of their size and weight, their respective air-compressing capacities, and their being equipped with connectors designed to fit all standard air valves with which practically all devices designed for the use or storage of compressed air have for many years been equipped, adapted for supplying pressure to tanks used in conjunction with fuel-operated torches, stoves, and lighting plants, for use by plumbers in testing gas and water mains for leaks, for inflating footballs, basket balls, and bicycle tires, as well as for inflating the tires of automobiles, automobile trucks, and motorcycles. The evidence shows that pumps manufactured by the plaintiff were actually used for several of the purposes hereinabove stated. All of the pumps manufactured and sold by the plaintiff during the period involved herein were alike as to design and principle of operation.

9. With the exception of those pumps which the plaintiff sold directly to manufacturers or distributors of various kinds of apparatus and devices dependent upon the use of compressed air for their operation, such as fuel-operated stoves and lighting plants, etc., and such other pumps as it sold directly to plumbing and heating companies and oth-

ers whom the plaintiff knew to be purchasing its pumps for nonautomotive vehicle usage, and with the further exception of such pumps as it sold directly to manufacturers of automobile trucks, the plaintiff was without knowledge at the time of the execution of its sales of pumps of the uses which would be made of such pumps by their ultimate purchasers. That situation was particularly true with reference to the pumps which the plaintiff sold to mail order houses and to wholesalers and jobbers of hardware.

10. That portion of the excise taxes involved herein which was paid by the plaintiff was paid on all pumps sold by it during the taxable period involved, with the exception of those pumps which it sold directly to automobile truck manufacturers and those which it sold for export, both of which classes were exempt from such taxation. There is no evidence concerning the actual quantities of air pumps sold by it, which it knew or could have reasonably assumed were initially purchased for uses other than in connection with automotive vehicles, and there is no evidence concerning the actual quantities of pumps sold by the plaintiff which it either knew or could have reasonably anticipated would or might ultimately be used or purchased for use in connection with automotive vehicles. Nor is there any evidence as to the respective amounts of excise taxes paid on each of such classes of sales.

11. The air pumps upon which the said taxes were paid were not primarily designed or specially adapted for use in inflating the tires of automobiles. They could with equal facility be used for the other purposes mentioned in finding 8, and they were not specially adapted for carriage in connection with an automobile, or in their general form so constructed as to be specially adapted for automobile purposes.

George M. Wilmeth, of Washington, D. C., for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

Plaintiff is a corporation which prior to December 13, 1924, was doing business under the name of the Dalton Malleable Castings Company, a corporation, which had about January 1, 1924, acquired the properties of the Sunderland Company, also a corporation. All three of these corporations were engaged in the business of manufacturing and selling air pumps.

This is a border line case on account of the indefinite nature of the evidence. The tax was assessed upon these tire pumps on the ground that they were automobile accessories. This the plaintiff denies, and thus raises the sole issue in the case.

■■ There is no evidence as to what use was actually made of any of these pumps, but the burden of proof is upon the plaintiff to show that they were not primarily adapted or specially designed for use upon automobiles and sold as such. The evidence shows that they were equally adapted and largely used for a number of other purposes besides that of inflating automobile tires. It also tends to show that the pump usually carried in connection with an automobile was somewhat smaller and cost less. The pumps were sold to jobbers generally and small dealers, also in large quantities to mail order houses like Montgomery Ward & Co. While the evidence is not as definite as it might be, we are justified in concluding that they were sold as articles of general merchandise without any statement by the purchasers as to what purpose they were fitted or for which they could be used; and no statement was made except in one instance where it appears from a part of a catalog that the pump, or a pump, manufactured by the Sunderland Company was described as "Sunderland's Tire Pump," with a special description in certain particulars as to size, appearance, and material. As we have hereinafter held that no recovery can be had on account of taxes paid by the Sunderland Company, it is not necessary to consider the effect of this circular. All of the tire pumps in controversy were supplied with standard valve connections which enabled them to be used in connection with a number of different kinds of apparatus as above stated.

Considering all of the testimony, we think the weight of the evidence shows that the tire pumps in question were commercial articles which, as stated in Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 423, 74 L. Ed. 1051, "ordinarily would be sold for general use" and were not "primarily adapted for use as a component part" of an automobile, and also that they were not "specially designed, manufactured, and sold for use on automobiles," but on the contrary were equally adapted to many other uses. See supplemental opinion in Anthony Co. v.

United States, 56 F.(2d) 481, this day rendered by the court.

■ The government sets up the further defense that the plaintiff cannot recover on the taxes paid by the Sunderland Company for the reason that it bought the assets of that company, including the claim which that company had for the refund of taxes, and that the transaction amounted to an assignment or transfer of the claim, which is void under section 3477 of the Revised Statutes. (31 USCA § 203).

The testimony with reference to the manner in which the plaintiff acquired the claim of the Sunderland Company for a refund is very meager, and simply shows that the plaintiff at a certain date acquired all the assets of the Sunderland Company by virtue of a written contract, but the contract is not set out in evidence. We think we would be justified in concluding that the Dalton Company purchased the assets of the Sunderland Company and that the purchase included the claim against the government, which is now in suit on account of taxes paid by the Sunderland Company. Such a transaction would amount to an assignment or transfer of the claim of the Sunderland Company, which would be invalid under the statute. In any event the burden of proof is upon the plaintiff to show how it acquired the claim of the Sunderland Company in order that the court can determine whether it is in a position to maintain suit thereon, or, in other words, whether it has a valid claim against the defendant upon which suit may be brought under the statute. The testimony is entirely lacking on this point. It might also be said that it is conceded by plaintiff that all taxes paid by any of the three companies on or before April 25, 1923, are barred by the statute of limitations, and only a small part of the taxes paid by the Sunderland Company were paid subsequent to that period.

■ There were three claims for refund filed in the case: The first claim was for taxes paid from November, 1920, to May, 1921, which is obviously barred. The second claim was filed October 25, 1923, for $6,915.-07 for taxes paid from June, 1921, to June, 1923. This was a claim filed by the Sunderland Company upon which we have held no recovery can be had. The third claim was filed about August 12, 1926, for a refund of $5,607.21 of taxes paid from August, 1923, to February, 1926. The stipulation filed by the parties and made part of the findings does not accord with the statement made in the third claim as to taxes paid by the Dalton Malleable Castings Company and the plaintiff. In fact, this claim appears to include some taxes paid by the Sunderland Company and also differs somewhat in amounts from what is stated in the stipulation and findings. An erroneous statement as to the amount of the payments we think would not affect plaintiff's right to recover for the amount actually paid by the Dalton Malleable Castings Company and the plaintiff; nor do we think the fact that the plaintiff only claimed $5,607.21 affects its right to recover more upon payments which were actually set out in its claim and upon which it asked for such greater amount as was "legally refundable." The payments made by the Dalton Malleable Castings Company and plaintiff, amounting in the aggregate to $6,026.18, and the date when each payment was made are set out in finding 3, which sum plaintiff is entitled to recover with interest at 6 per cent. per annum from the respective dates of payment, as provided by law.

Judgment will be rendered accordingly.